

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00274-CR
No. 02-23-00275-CR
No. 02-23-00276-CR
No. 02-23-00277-CR
No. 02-23-00278-CR
No. 02-23-00279-CR

_____

SHANNON LEE WELLS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court Nos. DC89-CR2022-1003-1, DC89-CR2022-1003-14, DC89-CR2022-
1003-15, DC89-CR2022-1003-16, DC89-CR2022-1003-17, DC89-CR2022-1003-18

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Shannon Lee Wells was convicted of one count of continuous sexual abuse of a child and five counts of indecency with a child by contact. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a)(1). He raises three challenges to his convictions, arguing that the evidence was insufficient to support the continuous sexual abuse conviction and that the trial court erred by admitting two different portions of testimonial evidence. Because Wells's sufficiency complaint is based on a misreading of the relevant statute, and because his evidentiary complaints are either unpreserved or harmless, we will affirm.

## I. Background

The State presented evidence that, from March through December 2018, Wells and his girlfriend, Casey Chapman, sexually abused then-12-year-old I.C. (Irene).[1]

### A. Abuse

Wells, Chapman, and their children lived in Irene's apartment complex. One of the couple's children was friends with Irene's sister, and Chapman often babysat Irene and her siblings or allowed them to use her internet connection to do their homework. Irene developed a close friendship with Chapman, and in 2018, she spent several nights at Wells and Chapman's apartment during her sixth grade spring break.

---

[1]We use a pseudonym for the minor complainant. *See* Tex. R. App. P. 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7; *Stephenson v. State*, 673 S.W.3d 370, 375 n.1 (Tex. App.—Fort Worth 2023, pet. ref'd).

Irene later recalled that, during that spring break, she had a conversation with Chapman about her sexuality and confided in Chapman that she "thought [she] might like both genders" and "might have a crush on her [i.e., Chapman]." Chapman initially told Irene that "nothing could ever happen," but then, later, she asked to kiss Irene on the lips, and after doing so, she put her hand into Irene's underwear and digitally penetrated her. Chapman continued the abuse from then on.

Within a month, Chapman brought Irene into her and Wells's bedroom— where Wells was asleep—for oral sex. Wells awoke and watched, then the next morning, he touched Irene's breast and vagina. After that, Wells joined in Chapman's sexual abuse of Irene.

Irene recalled that, at first, Wells primarily watched Chapman and Irene engage in sexual acts, but then he progressed to touching Irene's breast, then to performing oral sex on her, penetrating her with his fingers, and penetrating her with his penis.[2] Irene told the jury that each of these sexual acts—Wells's performing oral sex, penetrating her with his fingers, and penetrating her with his penis—occurred on multiple occasions for the remainder of the year.[3] She explained that Wells had told

---

[2]Eventually, Wells began penetrating Irene with his fingers or penis even when Chapman was not present.

[3]Even after Wells and Chapman moved from the apartment complex to a nearby house in the summer of 2018, Irene continued visiting their home, and the sexual abuse continued.

her that she needed to submit to sexual acts with him if she wanted to continue her relationship with Chapman.

Finally, in December 2018, Irene's mother grounded her, preventing her from visiting Wells and Chapman. Irene later described how she had been struggling with mental health during the months of abuse and how, not long after she was grounded, she "had a breakdown." During a conversation with her mother's boyfriend, Irene admitted her relationship with Chapman, and when her mother found out soon thereafter, the police became involved. In Irene's subsequent forensic interview, she revealed that Wells had sexually abused her as well.

Wells was indicted for numerous crimes, including one count of continuous sexual abuse of a child and five counts of indecency with a child by touching of the breast. *See id.* §§ 21.02(b), 21.11(a)(1), (c)(1).

## B. Trial

At Wells's trial, Irene described his sexual abuse for the jury.[4] In one portion of Irene's testimony—a portion particularly relevant to this appeal—Irene stated that Wells and Chapman had shown her movies that depicted sexual acts. But when she recalled one such instance in which Chapman showed her a film depicting oral sex, Wells objected, claiming that "any photos or things shown by [Chapman]" were

---

[4]Irene was 17 years old by the time of trial.

"irrelevant."[5]  The trial court overruled the objection.  Rather than going into further detail on the objected-to video, though, Irene went on to testify—without objection—that she, Wells, and Chapman had all watched a separate, three-video series of movies with sexual content and that, afterward, Wells and Chapman had decided to "perform[] those sexual activities that w[ere] shown in the movies on [her]."

At the end of the guilt–innocence phase, the jury convicted Wells of one count of continuous sexual abuse of Irene and five counts of indecency with Irene by breast-touching.  The case proceeded to punishment, and the jury heard additional testimony on the subject.  Again, one portion of that testimony is particularly relevant here.

Irene's school counselor, who had grown to know Irene in the year before trial, described Irene's struggles with mental health and referenced Irene having nightmares.  But as she began to describe the content of Irene's nightmares—stating that they were not "in a sequential order where [Irene] could make sense out of them, but . . . would be bits and pieces"—Wells objected that the testimony "about whatever [Irene's] nightmares were" was "based on hearsay."  Although this objection was overruled, the counselor proceeded to a different topic anyway and did not further explain "whatever [Irene's] nightmares were."

---

[5]Later, the State offered testimony that the use of sexual videos was a grooming behavior that some abusers employ to normalize sexual content.

The jury ultimately assessed a punishment of 40 years' confinement for continuous sexual abuse and 3 years' confinement for each count of indecency. The trial court signed judgments accordingly, and it ordered that the sentences run consecutively. Wells appeals.

## II. Discussion

Wells raises a sufficiency complaint and two evidentiary complaints for review. He argues that (1) the evidence was insufficient to prove the statutory timeframe requirement for continuous sexual abuse; (2) the trial court erred by admitting Irene's testimony regarding Chapman's sexual abuse, and specifically, Irene's testimony regarding Chapman's showing her a film with sexual content; and (3) the trial court erred by admitting the school counselor's testimony regarding Irene's nightmares and mental health issues.[6]

### A. Sufficiency Complaint

Wells first contends that the evidence was insufficient for a rational jury to conclude that the State satisfied the statutory timeframe requirement for the offense of continuous sexual abuse of a child.

To prove continuous sexual abuse of a child, the Penal Code required the State to present evidence that Wells committed two or more acts of sexual abuse "during a period that is 30 or more days in duration." *Id.* § 21.02(b)(1). Wells claims that this

---

[6]Wells's issues have been reordered for organizational purposes.

6

element was not established because—though he acknowledges that Irene testified to "acts that occurred over ten months between March 2018 and December 2018"—the State did not offer evidence that "at least two acts . . . occurred within thirty days of each other."

But Wells misreads the statutory language. Rather than proving that two acts of abuse "occurred within thirty days of each other," the Penal Code required the opposite: evidence that Wells's sexual abuse continued for "a period that [wa]s 30 or more days in duration." *Id.* Because Wells concedes that Irene testified to multiple acts that occurred over the course of several months, he has conceded the sufficiency of the properly read statutory timeframe requirement.

We overrule this issue.

## B. Evidentiary Complaints

In Wells's final two issues, he raises broad challenges to the allegedly erroneous admission of testimonial evidence from Irene and from her counselor.

### 1. Standard of Review

Generally, for a complaint regarding the improper admission of evidence to warrant reversal on appeal, the complaint must be (at a minimum) preserved and harmful. *See Sparks v. State*, No. 02-22-00247-CR, 2024 WL 1318946, at *4–5 (Tex. App.—Fort Worth Mar. 28, 2024, no pet.) (mem. op., not designated for publication).

To preserve an evidentiary challenge, the defendant must raise a timely and specific objection before the trial court, obtain a ruling on that objection, and raise the

same challenge on appeal. Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *McCurdy v. State*, No. 02-22-00264-CR, 2023 WL 5766052, at *11 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op., not designated for publication).

And even if the challenge is preserved, the improper admission of evidence will not warrant reversal unless it affected the defendant's substantial rights, meaning that it had a substantial and injurious effect or influence in determining the jury's verdict. *See Sparks*, 2024 WL 1318946, at *5; *Henderson v. State*, No. 02-16-00208-CR, 2017 WL 3184482, at *2 (Tex. App.—Fort Worth July 27, 2017, pet. ref'd) (mem. op., not designated for publication).

### 2. Irene's Testimony

Wells first alleges that the trial court erred by admitting Irene's testimony regarding "acts between the victim and a person other than the defendant," i.e., Chapman. According to Wells, such testimony was irrelevant and violative of Texas Rule of Evidence 403. But Wells has preserved only a sliver of this broad evidentiary complaint.

Irene testified to numerous "acts between [her] and [Chapman]," but Wells's brief identifies just one portion of such testimony that he objected to: Irene's statement that Chapman had shown her a film of oral sex. Apart from this single, objected-to, briefed challenge, Wells's broad evidentiary complaint was inadequately preserved, inadequately briefed, or both. *See* Tex. R. App. P. 33.1(a), 38.1(i); *Lucio v.*

8

*State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (holding that issue was "inadequately briefed and present[ed] nothing for review as th[e appellate c]ourt [wa]s under no obligation to make appellant's arguments for her"); *Beavers v. State*, No. 2-05-448-CR, 2006 WL 3247887, at *6 (Tex. App.—Fort Worth Nov. 9, 2006, pet. ref'd) (mem. op., not designated for publication) (holding complaint was inadequately briefed when appellant raised "broad assertions" that trial counsel failed to communicate or prepare witnesses but he "d[id] not assert how or when his trial attorneys failed to communicate or which witnesses his trial attorneys failed to prepare").

Furthermore, even for Wells's sole objected-to, briefed challenge to Irene's testimony, his argument on appeal only partially comports with his argument at trial. *See McCurdy*, 2023 WL 5766052, at *11 ("An issue is not preserved 'if the legal basis of the complaint raised on appeal varies from the complaint made at trial.'" (quoting *Lovill*, 319 S.W.3d at 691–92)). Wells objected to Irene's video-related testimony on just one legal ground: relevance. He did not object on the basis of Rule 403, so he has not preserved that complaint for our review. *See id.* at *12 ("A relevance objection is insufficient to preserve a Rule 403 complaint.").

As for the narrow relevance complaint that Wells preserved and briefed—his claim that the trial court erred by admitting Irene's allegedly irrelevant testimony regarding Chapman having shown her a film involving oral sex—even if we assume that the trial court committed error, such error was harmless because the challenged

9

testimony was cumulative of other, substantially similar testimony. *See Elmawla v. State*, No. 02-19-00279-CR, 2021 WL 1421437, at \*3 (Tex. App.—Fort Worth Apr. 15, 2021, pet. ref'd) (mem. op., not designated for publication) ("A trial court's error in admitting evidence is harmless when similar evidence is properly admitted.").

After Irene mentioned the movie that Chapman had shown her, she testified that both Wells and Chapman had shown her a different, three-film series that contained sexual content. And Irene provided detail about the three-film series—far more detail than she provided about the video that Chapman had shown her.

Irene identified the specific movie series she had watched with Wells and Chapman, she explained how the idea to watch the movies had come about, she stated that Wells and Chapman had afterward decided to perform some of the sex acts depicted in the movies on her, she confirmed that Wells and Chapman had purchased items specifically for the reenactments, and she described what they did during those reenactments.[7] Wells did not object to this testimony, and he does not challenge it on appeal.

Both logic and case law dictate that erroneously admitted evidence does not have a substantial or injurious influence on a jury's verdict "if the same or similar evidence is admitted without objection at another point in the trial." *Sandone v. State*, 394 S.W.3d 788, 794 (Tex. App.—Fort Worth 2013, no pet.); *see Elmawla*, 2021 WL

---

[7]For example, she explained how Wells and Chapman had tied her hands with rope and handcuffs while they had sex with her.

10

1421437, at *3–6 (recognizing rule and holding no harm when trial court erroneously admitted officer testimony regarding complainant's credibility but "another police officer was allowed, without objection, to vouch for the complainant's credibility" as well); *Henderson*, 2017 WL 3184482, at *2–3 (recognizing rule and holding no harm from admission of hearsay testimony linking co-conspirator to murder weapon because appellant's "pretrial confession . . . substantiate[d] the same facts as [the hearsay] testimony"). And Irene's testimony relating the events surrounding Wells's and Chapman's showing her the three-film series with sexual content was not only similar to but also far more detailed and damning than her objected-to testimony about Chapman showing her a single film. Therefore, any error in the admission of the objected-to testimony was harmless.

We overrule this issue.

### 3.    Counselor's Testimony

In his final issue, Wells lodges another broad complaint regarding the admission of testimonial evidence. Wells complains that Irene's school counselor's testimony regarding "conversations held with the victim" and "issues the victim [wa]s experiencing," which was admitted in the punishment phase of the trial, included inadmissible hearsay. But as with Wells's first evidentiary complaint, only a small portion of Wells's issue has been preserved.

Wells's briefing mentions just one component of the counselor's testimony that he objected to at trial: the counselor's testifying to "whatever [Irene's] nightmares

11

were."  To the extent that Wells intends to challenge other testimony from Irene's counselor despite his failure to object at trial or identify such testimony on appeal, his challenge has been inadequately preserved, inadequately briefed, or both. *See* Tex. R. App. P. 33.1(a), 38.1(i); *Beavers*, 2006 WL 3247887, at \*6.

As for Wells's narrow, preserved complaint to the counselor's nightmare-related testimony, even if we assume that the trial court erred by admitting this testimony, such error was again harmless.  As soon as the counselor broached the topic of Irene's nightmares—saying that they were not "in a sequential order where [Irene] could make sense out of them, but . . . would be bits and pieces"—Wells objected to her testifying regarding "whatever [Irene's] nightmares were."  And although the trial court overruled Wells's objection, the counselor did not return to the topic to explain the content of Irene's nightmares.[8]  She did not identify what the nightmares contained "bits and pieces" of or even whether the nightmares were related to Wells's abuse at all.  Thus, despite the trial court's ruling, the jury did not hear "whatever [Irene's] nightmares were" from the school counselor, so such testimony could not have had a substantial or injurious influence on the verdict.

We overrule Well's final issue.

---

[8]Although the counselor later referenced Irene's suffering from "flashbacks," she did not clarify whether such flashbacks related to the sexual abuse or whether they occurred during Irene's nightmares, and regardless, Wells did not object.

## III.  Conclusion

Having overruled Wells's three issues, we affirm the trial court's judgments of conviction.  Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 6, 2024

13